UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, an individual Michigan resident
filing anonymously under a fictitious name,

        Plaintiff,

                                  Case No. _____

v.                                     Hon. _____

NUCCIO PROCESSING, INC. and        Mag. _____
ANTONIO NUCCIO, jointly and severally.

        Defendant.
_____

John Philo (P52721)
Tony Paris (P71525)
MAURICE & JANE SUGAR LAW CENTER
FOR ECONOMIC & SOCIAL JUSTICE
Attorneys for Plaintiff
4605 Cass Avenue, Second Floor
Detroit, Michigan 48201
(313) 993-4505
mail@sugarlaw.org

David M. Blanchard (P67190)
Nakisha N. Chaney (P65066)
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.
Attorneys for Plaintiff
101 North Main Street, Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dblanchard@nachtlaw.com
nchaney@nachtlaw.com
_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

        NOW COMES Plaintiff, JANE DOE, and through her attorneys, MAURICE & JANE

SUGAR LAW CENTER FOR ECONOMIC & SOCIAL JUSTICE and NACHT, ROUMEL,

SALVATORE, BLANCHARD & WALKER, P.C., for her Complaint, does hereby allege as follows:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1343, on Plaintiff's claims of Quid Pro Quo Sexual Harassment and Hostile Work Environment under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981 for Sex and National Origin Discrimination. Supplemental jurisdiction is also conferred by 28 U.S.C. § 1367 on Plaintiff's claims under Michigan's Elliot-Larsen Civil Rights Act, for Intentional Infliction of Emotional Distress, and for Battery.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), since all Defendants are located within and the unlawful employment practices giving rise to this action occurred within the Eastern District of Michigan.

3. On or around February 13, 2014, the Equal Employment Opportunity Commission issued a right-to-sue letter to Plaintiff.

## PARTIES

4. Plaintiff, JANE DOE 1 ("Plaintiff"), is a Michigan resident of Mexican national origin living in Wayne County, Michigan.

5. Upon information and belief, Defendant ANTONIO NUCCIO ("Nuccio") resides in the State of Michigan, county of Wayne. At all times material hereto, the Defendant NUCCIO was the owner and registered agent for Co-Defendant NUCCIO PROCESSING, INC. and acted as its manager.

6. Defendant NUCCIO PROCESSING, INC. is and was at all times material hereto, a body corporate organized and chartered under the laws of the State of Michigan and registered with the State of Michigan to do business in this judicial district.

7. Defendant NUCCIO PROCESSING INC. provides services preparing food for restaurants.

8. Defendant NUCCIO manages Nuccio Processing and acted as Plaintiff's employer and supervisor during her time with Nuccio Processing.

9. Plaintiff began working for Nuccio Processing in December 2002.

10. Defendant Nuccio then met with Plaintiff and initially agreed to hire her as a part-time employee.

11. Initially, Plaintiff helped in the late night shift with food preparation for restaurants by chopping vegetables.

12. Plaintiff was fired or forced to leave the job for two periods of time, but returned to full time work in 2011.

13. Between July 2011 and December 2012, Nuccio had sexual intercourse with Plaintiff at work twelve or more times.

14. Plaintiff was not a willing participant in the sexual relationship but was forced and coerced.

15. Defendants used physical force, promises of additional work, and threats of termination to accomplish the sexual assaults.

16. Defendant Nuccio would often smoke marijuana cigarettes and drink alcohol at work. He would also often lose his temper and yell racially and sexually motivated insults at his employees, calling them "stupid."

17. One night in 2007, Plaintiff witnessed Nuccio arguing with a female employee she knew to be having a sexual affair with Mr. Nuccio. He fired the female employee that night, and he also fired Plaintiff on the mistaken belief that she was laughing about the situation.

18. About a year later, at the beginning of 2008, Plaintiff returned to Nuccio Processing because she was in desperate need of a job.

19. In 2009, Plaintiff became the manager who took food orders from Nuccio. She also ran a machine that moved items around the building.

20. Nuccio continued to regularly smoke marijuana and drink on the job, and yell and curse at his employees, including Plaintiff.

21. One night, around April 2010, Nuccio was acting violently and erratically, cursing at the workers and calling them worthless. He told the employees present not to come back after that night.

22. Plaintiff went to work at a paper bag factory. There, she injured her ankle in April 2010 and was fired because of her need for treatment and physical therapy.

23. In need of work, Plaintiff returned to Defendants and pleaded with Nuccio for a full time job to help pay for the physical therapy and medical care for a teenage daughter in Mexico.

24. Nuccio rehired Plaintiff and gave her an assignment that did not require strenuous work, but did require cleaning and janitorial duties that brought Plaintiff into closer contact with Nuccio.

25. Nuccio began paying more attention to Plaintiff after her rehire, often asking her if she was okay. He also would ask her questions about how she was moving or what she was wearing a particular day. Some of these questions were about information that he could not have known unless he was watching her on the security camera because she had not seen him during the instances he would ask about.

26. Nuccio began to ask Plaintiff to clean areas around him at work, and he would watch her closely. While she was cleaning, he would ask her a lot of personal questions and that he preferred her over other cleaning staff.

27. In late July 2011, Defendant forced himself on Plaintiff while she was cleaning his office. He came in the office and told Plaintiff to sit down. When Plaintiff refused, Nuccio said "I'm telling you to sit down, I'm the boss."

28. Plaintiff became very afraid and started shaking. Nuccio asked why she was afraid, and Plaintiff said it was because she needed the job. At that point, Nuccio grabbed a pallet jack and used it to block the doorway entry to his office. Nuccio demanded Plaintiff have sex with him. Plaintiff refused and asked him not to touch her. Nuccio repeated that he needed sex now. Nuccio grabbed Plaintiff by her left shoulder, threw papers off the table and then grabbed her good leg. Plaintiff pleaded for Nuccio to stop but he did not. He continued to force himself on Plaintiff, telling her she could have a job for decades to come and he forced himself inside her.

29. After the sexual assault, Nuccio left the office like nothing had happened but returned shortly afterwards to tell Plaintiff that if she did not keep her mouth shut, she would lose her job.

30. Some 6 to 7 weeks later, Defendant Nuccio suspected that Plaintiff was pregnant and offered to give her $300 for an abortion.

31. Around the same time, Plaintiff went to a doctor who confirmed that she was pregnant, she also discovered that she had a condition that complicated the pregnancy.

32. Plaintiff told Nuccio of the visit to the doctor and told him how much it cost. Nuccio told Plaintiff could keep her job for now, but that he would fire her if she told the doctor about him.

33. He also warned Plaintiff that she would need to continue having sex with him whenever he wanted to in order to keep her job.

34. Between the first instance in July 2011 and December 2012, Nuccio sexually assaulted Plaintiff and forced her to perform other sexual acts on multiple occasions.

35. Late in December 2012, after Plaintiff had already clocked-out for the day, Nuccio had a manager ask her and a co-worker to clean the facility. While she was cleaning a bathroom, Defendant Nuccio entered and grabbed her rear, he told her that he knew she had been avoiding him and needed to come back to his office. Defendant Nuccio encouraged Plaintiff to smoke marijuana and take tequila shots with him and her co-worker. She resisted his physical advances and told Nuccio that her answer was still no. Nuccio grabbed her anyway until Plaintiff diverted the situation by pleading for financial help with their daughter. Nuccio gave her $90 and told her to never ask for help with their daughter again.

36. On January 3, 2013, Nuccio fired Plaintiff. She called him to ask why she had been fired. He replied: "Because you've become a problem for me, you won't sleep with me, and you talked when I told you not to talk. There are other women who need work who won't talk."

37. During the January 3, 2013 call, Plaintiff could hear Nuccio's girlfriend on the other side of the phone. She came on the line and told Plaintiff that it was her who had demanded Plaintiff be fired.

38. Despite great fear for her personal safety and her financial stability, Plaintiff filed a police report against Nuccio on January 10, 2013.

39. In September 2013, Plaintiff received a phone call from two former co-workers at Nuccio Processing. The workers were translating and speaking for Nuccio (which was odd because he speaks Spanish). They told her that childcare workers had come to see Nuccio, and this made him very angry.

40. Nuccio called Plaintiff several times that day and left a voice message asking her if she was crazy for not realizing the damage she had caused for others who work at Nuccio Processing. He stated that Plaintiff should not have gone to the police and should have only filed for child support.

41. Plaintiff continues to have nightmares about the totality of these incidents. She is often afraid that Nuccio will continue to hurt her. From the first sexual assault in July 2011, Plaintiff was afraid to speak up because of fear of losing her job and hurting her family. The stress and fear have also caused Plaintiff physical pain, emotional distress and trauma.

### COUNT I – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: QUID PRO QUO SEXUAL HARASSMENT – DISCRIMINATION BASEDON SEX

42. Plaintiff incorporates by reference the above paragraphs as though fully stated herein.

43. At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

44. At all times relevant to this action, Defendant Nuccio Processing was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

45. In violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, Defendant Nuccio Processing demanded submission to sex and sexual acts as a term and condition of employment. Defendant Nuccio Processing expressly conditioned wages, hours, and continued employment on Plaintiff's willingness to submit to sexual assault. For instance, Nuccio, acting on behalf of defendant Nuccio Processing, would say "you need pay, I need sex" or similar statements in response to requests for work or requests for raises, and on other regular occasions.

46. Nuccio had sexual intercourse with Plaintiff at work on more than a dozen occasions from July 2011 to December 2012.

47. Defendant Nuccio Processing terminated Plaintiff's employment after her refusal to have sex with him and after Plaintiff told others of Defendant Nuccio's sexual assaults.

48. Defendant Nuccio Processing, subjected Plaintiff to sexual assault, on repeated occasions by Defendant Nuccio, who stated that he would fire her if she told a doctor that he was the father of their child or if she did not have sex with him whenever he wanted to.

49. Defendant Nuccio Processing was on notice of Nuccio's actions acting on behalf of the company.

50. Plaintiff's employment Defendant Nuccio Processing's actions constitute illegal discrimination on the basis of sex (quid quo pro sexual harassment).

51. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff sustained damages including but not limited to loss of wages and earnings, loss of certain benefits, and loss of other benefits and privileges of her employment, emotional pain, suffering, inconvenience, and mental anguish.

## COUNT II - TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: HOSTILE WORK ENVIRONMENT - DISCRIMINATION BASED ON SEX

52. Plaintiff incorporates by reference the above paragraphs as though fully stated herein.

53. At all times relevant to this action, Plaintiff was Defendant Nuccio Processing's employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

54. At all times relevant to this action, Defendant Nuccio Processing was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

55. In violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, Defendants' actions constitute discrimination on the basis of sex (hostile work environment).

56. Defendants subjected Plaintiff to severe and intolerable hostile environment, sexually suggestive comments, solicitation for sex, and making submission to sexual acts by Plaintiff and other employees was a term or condition of employment.

57. Sexually suggestive comments and acts began before the limitations period but began and continued as a continuing violation beyond February 2011.

58. Plaintiff suffered adverse employment action based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

59. In all cases, Plaintiff's sex was a factor that made a difference in imposing a sexually hostile environment by Defendants.

60. Defendants' actions constitute intentional discrimination on the basis of sex.

61. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff sustained damages including but not limited to loss of wages and earnings, loss of benefits, and loss of other benefits and privileges of her employment, emotional pain, suffering, inconvenience, and mental anguish.

### COUNT III – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: DISCRIMINATION BASED ON NATIONAL ORIGIN

62. Plaintiff incorporates by reference the above paragraphs as though fully stated herein.

63. At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

64. At all times relevant to this action, Defendants were Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

65. In violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, Defendants' actions constitute discrimination on the basis of national origin.

66. Plaintiff suffered adverse employment action, including but not limited to demeaning and discriminatory comments that the Mexican employees are "stupid" and "worthless" based on her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

67. In all cases, Plaintiff's national origin was a factor that made a difference in the Defendants' actions.

68. Defendants' actions constitute intentional discrimination against Plaintiff on the basis of national discrimination.

69. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff sustained damages including but not limited to loss of wages and earnings, loss of benefits, and loss of other benefits and privileges of her employment, emotional pain, suffering, inconvenience, and mental anguish.

**COUNT IV – 42 U.S.C. §1981 –
QUID PRO QUO SEXUAL HARASSMENT
DISCRIMINATION BASED ON SEX and RACE**

70. Plaintiff incorporates by reference the above paragraphs as though fully stated herein.

71. At all times relevant to this action, Defendants subjected Plaintiff to sexual assault, battery, demeaning comments and a hostile environment based in whole or in part on the sex and race (Mexican) of Plaintiff.

72. In violation of 42 U.S.C. §1981. et. seq., Defendants' actions constitute discrimination on the basis of sex and race depriving Plaintiff of equal rights and enjoyment of employment.

73. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff sustained damages including but not limited to loss of wages and earnings, loss of benefits, and loss of other benefits and privileges of her employment, emotional pain, suffering, inconvenience, and mental anguish.

### COUNT V – MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT: QUID PRO QUO SEXUAL HARASSMENT

74. Plaintiff incorporates by reference the above paragraphs as though fully stated herein. At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of the Elliot-Larsen Civil Rights Act, MCLA 37.2101, *et seq.*

75. At all times relevant to this action, Defendants were Plaintiffs employer within the meaning of the Elliot-Larsen Civil Rights Act, MCLA 37.2101, *et seq.*

76. In violation of Title VII of the Elliot-Larsen Civil Rights Act, MCLA 37.2101, *et seq.*, Defendants' actions constitute discrimination on the basis of sex (quid quo pro sexual harassment).

77. Plaintiff suffered adverse employment action based on her sex in violation of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2202 *et seq*.

78. In all cases, Plaintiff's sex was a factor that made a difference in the Defendants' actions.

79. Defendants' actions constitute intentional discrimination against Plaintiff on the basis of sex.

80. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff sustained damages including but not limited to loss of wages and earnings, loss of benefits, and loss of other benefits and privileges of her employment, emotional pain, suffering, inconvenience, and mental anguish.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

81. Plaintiff incorporates by reference the above paragraphs as though fully stated herein.

82. Defendants knowingly, intentionally, and willfully caused Plaintiff severe emotional distress. Defendants' actions caused her great mental stress and anguish, leading Plaintiff to suffer physical and emotional distress and damage.

83. Defendants' intentional and knowing actions led to severe emotional distress included: sexual assault, threats of termination for disclosing the assaults, threats to terminate friends or family members unless she permitted Defendant Nuccio to continue to sexual assault, causing fear for her safety, and subjecting Plaintiff to other demeaning comments and threats.

84. As a result of Defendants' conduct, Plaintiff is entitled to recovery including but not limited to compensatory damages, punitive damages, exemplary damages, costs, prejudgment interest and other damages as allowed by law and equity.

## COUNT VII – BATTERY

85. Plaintiff incorporates by reference the above paragraphs as though fully stated herein.

86. Towards the end of July 2011 and at regular times up to December 2012, Defendant Nuccio forced Plaintiff to have sex with him. She told him no. She asked him not to touch her, but Nuccio grabbed her and forced himself on her. She pleaded with him to stop, but he forced his penis into her vagina. This behavior continued until December 2012 with Nuccio forcing Plaintiff to have sex with him on a dozen or more times.

87. Nuccio's touching occurred without voluntary consent.

88. Nuccio's actions resulted in a child and caused Plaintiff severe physical and emotional harm.

89. As a result of Nuccio's conduct, Plaintiff is entitled to an award of damages including but not limited to compensatory damages, exemplary damages, costs, prejudgment interest and other damages as allowed by law and equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable court enter Judgment against the Defendants jointly and severally, in whatever amount is fair, just and equitable for the injuries and damages so wrongfully sustained by the Plaintiff including, but not limited, to compensatory damages, liquidated damages, punitive damages, exemplary damages, interest, costs and attorney fees and other damages as allowed in law or equity.

Respectfully submitted,

John Philo (P52721)
Tony Paris (P71525)
MAURICE & JANE SUGAR
LAW CENTER FOR ECONOMIC
& SOCIAL JUSTICE
4605 Cass Avenue, Second Floor
Detroit, Michigan 48201
313-993-4505
mail@sugarlaw.org

NACHT, ROUMEL, SALVATORE,
BLANCHARD AND WALKER, P.C.

/s/ David M. Blanchard
David M. Blanchard (P67190)
Nakisha N. Chaney (P65066)
101 North Main Street, Suite 555
Ann Arbor, MI 48104
(734) 663-7550
dblanchard@nachtlaw.com
nchaney@nachtlaw.com

Attorneys for Plaintiffs

Dated: May 13, 2014

## DEMAND FOR JURY TRIAL

Plaintiff, by and through her counsel, demands a trial by jury in the above-captioned matter.

Respectfully submitted,

John Philo (P52721)
Tony Paris (P71525)
MAURICE & JANE SUGAR
LAW CENTER FOR ECONOMIC
& SOCIAL JUSTICE
4605 Cass Avenue, Second Floor
Detroit, Michigan 48201
313-993-4505
mail@sugarlaw.org

NACHT, ROUMEL, SALVATORE,
BLANCHARD AND WALKER, P.C.

/s/ David M. Blanchard
David M. Blanchard (P67190)
Nakisha N. Chaney (P65066)
101 North Main Street, Suite 555
Ann Arbor, MI 48104
(734) 663-7550
dblanchard@nachtlaw.com
nchaney@nachtlaw.com

Attorneys for Plaintiffs

Dated: May 13, 2014